Slip Op. 21-41

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NOVOLIPETSK STEEL PUBLIC JOINT STOCK COMPANY and NOVEX TRADING (SWISS) SA,** | |
| **Plaintiffs,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Claire R. Kelly, Judge** |
| **Defendant,** | **Court No. 20-00031** |
| **and** | |
| **STEEL DYNAMICS, INC. and NUCOR CORPORATION,** | |
| **Defendant-Intervenors.** | |

## OPINION AND ORDER

[Granting Defendant's motion to amend the administrative record, and the index to the administrative record, dismissing Plaintiffs' complaint challenging the U.S. Department of Commerce's final determination in the 2017–2018 administrative review of certain hot-rolled flat-rolled carbon-quality steel products from the Russian Federation, dismissing Plaintiffs' motion for judgment on the agency record and motion for discovery.]

Dated: April 13, 2021

Valerie Ellis, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., argued for plaintiffs Novolipetsk Steel Public Joint Stock Company and NOVEX Trading (Swiss) SA. Also on the briefs were Kimberly Reynolds and Daniel L. Porter.

Kelly A. Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant. Also on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, John V. Coghlan, Deputy Assistant Attorney General for the Federal Programs Branch

performing the duties and assignments of Acting Assistant Attorney General, <u>Brian M. Boynton</u>, Acting Assistant Attorney General,  <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel were <u>Brandon J. Custard</u> and <u>Daniel J. Calhoun</u>, Attorneys, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

<u>Luke A. Meisner</u>,  Schagrin Associates, of Washington, D.C., argued for defendant-intervenor Steel Dynamics, Inc.  Also on the briefs were <u>Roger B. Schagrin</u>, <u>Elizabeth J. Drake</u>, and <u>Kelsey M. Rule</u>.

<u>Cynthia C. Galvez</u>, Wiley Rein LLP, of Washington, D.C., argued for defendant-intervenor Nucor Corporation.  Also on the briefs were <u>Alan H. Price</u> and <u>Christopher B. Weld</u>.

Kelly, Judge:  This matter is before the court on several motions.  Pursuant to U.S. Court of International Trade ("USCIT") Rule 56.2, Plaintiffs Novolipetsk Steel Public Joint Stock Company ("NLMK") and NOVEX Trading (Swiss) SA's ("NOVEX") move for judgment on the agency record challenging the U.S. Department of Commerce's ("Commerce") final determination in the 2017–2018 administrative review of the antidumping duty ("ADD") order covering certain hot-rolled flat-rolled carbon-quality steel products ("HRC") from the Russian Federation ("Russia").  <u>See</u> [NLMK & NOVEX's 56.2] Mot. J. Agency R. & accompanying Br. Supp. 56.2 Mot. J. Agency R., Aug. 10, 2020, ECF No. 44 ("Pls.' 56.2 Mot." and "Pls.' 56.2 Br."); <u>see also</u> [HRC] From [Russia], 85 Fed. Reg. 299 (Dep't Commerce Jan. 3, 2020) (final results of [ADD] admin. review; 2017–2018) ("<u>Final Results</u>"); Compl. ¶ 1, Mar. 4, 2020, ECF No. 15.  Plaintiffs also move to compel completion of the administrative record, move to supplement the record, and move for permission to conduct discovery for purposes of completing and supplementing the record.  <u>See</u> [Pls.'] Mot. to Compel Completion

R. & Mot. Permission to Conduct Discovery at 1, Oct. 16, 2020, ECF No. 62 ("Pls.'

Mot. to Compel").

Defendant, as well as Defendant-Intervenors Steel Dynamic, Inc. ("SDI") and

Nucor Corporation ("Nucor") (collectively, "Defendant-Intervenors"), move to dismiss

Plaintiffs' complaint.  See Def.'s Mot. Dismiss & Resp. to [Pls.' 56.2 Mot.], Oct. 16,

2020, ECF No. 64 ("Def.'s Mot. & 56.2 Resp. Br."); [SDI's] Mot. Dismiss Pls.' Compl.

& accompanying Memo. Supp. Mot. Dismiss, May 18, 2020, ECF No. 32 ("SDI's Mot.

Dismiss & Supp. Br."); [Nucor's] Mot. Dismiss, May 22, 2020, ECF No. 33 ("Nucor's

Mot. Dismiss"); Memo. Supp. [Nucor's] Mot. Dismiss Pls.' Compl., May 22, 2020, ECF

No. 33-2 ("Nucor's Mot. Dismiss Br.").

Defendant and Defendant-Intervenor contend that the court should dismiss

certain counts of Plaintiffs' complaint for lack of subject matter jurisdiction.  See

Def.'s Mot. & 56.2 Resp. Br. at 8–13; SDI's Mot. Dismiss & Supp. Br. at 11–13; Nucor's

Mot. Dismiss Br. at 7–12, 14–16.  If any of Plaintiffs' claims fall within this court's

jurisdiction, Defendant and Defendant-Intervenors argue that Plaintiffs' complaint

should be dismissed for failure to exhaust administrative remedies and for failure to

establish a case or controversy.  See Def.'s Mot. & 56.2 Resp. Br. at 13–18, 28; SDI's

Mot. Dismiss & Supp. Br. at 7–11; Nucor's Mot. Dismiss Br. at 16–22; see also Reply

Supp. [SDI's Mot. Dismiss & Supp. Br.] at 2–9, July 23, 2020, ECF No. 40 ("SDI's

Reply Supp. Mot. Dismiss").  Moreover, Defendant opposes Plaintiffs' motion to

compel, and moves for leave to amend the index of the administrative record and

Court No. 20-00031                                                        Page 4

correct the record to include March 29, 2019 liquidation instructions from Commerce

to U.S. Customs and Border Protection ("CBP" or "Customs") pertaining to NLMK's

products.  See Def.'s Mot. Leave to Amend Index of Admin. R., Nov. 6, 2020, ECF No.

65 ("Def.'s Mot. Leave to Amend").   For the following reasons, the court grants

Defendant's motion for leave to amend the administrative record.   The court also

grants Defendant's and Defendant-Intervenors' motions to dismiss Plaintiffs'

complaint.  As such, the court dismisses Plaintiffs' 56.2 motion for judgment on the

agency record, and dismisses Plaintiffs' motion to compel, supplement, and conduct

discovery as moot.

## BACKGROUND

On March 11, 2019, in response to requests from interested parties, Commerce

initiated an administrative review of the ADD order covering certain HRC products

from Russia, the period of review ("POR") spanning December 1, 2017 through

November 30, 2018.  See Compl. ¶¶ 5–6; see also Initiation of Antidumping and

Countervailing Duty Admin. Reviews, 84 Fed. Reg. 9,297, 9,308 (Dep't Commerce

Mar. 14, 2019) ("Initiation Notice").  Commerce selected NLMK, Severstal PAO, and

Severstal Export GmbH to participate in the review as respondents.  See Initiation

Notice, 84 Fed. Reg. at 9,300.

On April 9, 2019, NLMK submitted a letter to Commerce certifying that it had

no shipments of subject merchandise during the POR and requesting that Commerce

rescind  its  administrative  review  of  NLMK  in  accordance  with  19  C.F.R.

§ 351.213(d)(3) (2019).[1]   See Compl. ¶ 9; see also Memo. Re: Certification of No

Shipments for [NLMK], PD 18, bar code 3816827-01 (Apr. 9, 2019).[2]   Commerce

issued a "no shipment inquiry" to CBP and confirmed that none of the respondents

had shipments of subject HRC during the POR.  See Compl. ¶¶ 10–11; see also Memo.

Re: [CBP] No-Shipment Inquiry Instructions, PD 25, bar code 3858656-01 (July 7,

2019).   On October 7, 2019, Commerce published the results of its preliminary

determination.  Compl. ¶ 12; see also [HRC] from [Russia], 84 Fed. Reg. 53,408 (Dep't

Commerce Oct. 7, 2019) (prelim. no shipments determination of [ADD] admin. review;

2017–2018 ("Prelim. Results").  Although Commerce "preliminary determine[d] that

NLMK, Severstal PAO, and Severstal Export GmbH had no shipments of subject

merchandise during the POR[,]" Commerce, citing agency practice,[3] found that it

---

[1] Further citations to Title 19 of the Code of Federal Regulations are to the 2019 edition.

[2] On April 10, 2020, Defendant submitted indices to the public and confidential administrative records underlying Commerce's final determination.  See ECF No. 27-1.  Defendant later filed a corrected proposed index to the public record.  For purposes of disposing of the pending motions, the court refers to the proposed index, located on the docket at ECF No. 65-3.  All references to administrative record documents in this opinion are to the numbers Commerce assigned to the documents in the proposed index.

[3] Commerce cites various administrative proceedings as well as its reseller policy, which states that:

> [A]utomatic liquidation at the cash-deposit rate required at the time of entry can only apply to a reseller which does not have its own rate if no administrative review has been requested, either of the reseller or of any producer of merchandise the reseller exported to the United States. If

(footnote continued)

would not be appropriate to rescind the administrative review, and instead decided

"to complete the review and issue appropriate instructions to CBP based on the final

results[.]"   See Prelim. Results, 84 Fed. Reg. at 53,411;[4] see also Antidumping &

Countervailing Duty Proceedings, 68 Fed. Reg. 23,954, 23,954 (Dep't Commerce May

6, 2003) (notice of policy concerning assessment of antidumping duties) ("Reseller

Policy").  On January 3, 2020, Commerce published the Final Results, which stated

---

> the Department conducts a review of a producer of the reseller's merchandise where entries of the merchandise were suspended at the producer's rate, automatic liquidation will not apply to the reseller's sales. If, in the course of an administrative review, the Department determines that the producer knew, or should have known, that the merchandise it sold to the reseller was destined for the United States, the reseller's merchandise will be liquidated at the producer's assessment rate which the Department calculates for the producer in the review. If, on the other hand, the Department determines in the administrative review that the producer did not know that the merchandise it sold to the reseller was destined for the United States, the reseller's merchandise will not be liquidated at the assessment rate the Department determines for the producer or automatically at the rate required as a deposit at the time of entry. In that situation, the entries of merchandise from the reseller during the period of review will be liquidated at the all-others rate if there was no company-specific review of the reseller for that review period.

Reseller Policy, 68 Fed. Reg. at 23,954; see also Prelim. Results, 84 Fed. Reg. at 53,411 & nn. 10, 16 (citations omitted).

[4] Regarding assessment rates, the Prelim. Results state:

> If we continue to find that NLMK, Severstal PAO, and Severstal Export GmbH had no shipments of subject merchandise in the final results, we will instruct CBP to liquidate any existing entries of merchandise produced by NLMK, Severstal PAO, and Severstal Export GmbH, but exported by other parties, at the rate for the intermediate reseller, if available, or at the all-others rate.

Prelim. Results, 84 Fed. Reg. at 53,411.

that "[t]he cash deposit rates for NLMK, Severstal PAO, and Severstal Export GmbH

will remain unchanged from the rate assigned to them in the most recently completed

review of those companies."  Compl. ¶ 14 (quoting <u>Final Results</u>, 85 Fed. Reg. at 301).[5]

     Plaintiffs commenced the present action under 28 U.S.C. § 1581(c) (2018),[6]

seeking review of Commerce's final determination pursuant to section

516A(a)(2)(A)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C.

§ 1516a(a)(2)(A)(I) and § 1516a(2)(B)(iii) (2018).[7]  <u>See</u> Summons, Feb. 3. 2020, ECF

No. 1; Compl.;[8] <u>see also</u> <u>Final Results</u>, 85 Fed. Reg. 299.  In Counts I and II of the

complaint, Plaintiffs allege that Commerce's decision to complete the administrative

---

[5] Regarding assessment rates, the <u>Final Results</u> state:

> Further, because we continue to find in these final results that NLMK, Severstal PAO, and Severstal Export GmbH had no shipments of subject merchandise during the POR, any suspended entries that entered under NLMK, Severstal PAO, and Severstal Export GmbH case numbers (i.e., at that company's rate) will be liquidated at the all-others rate if there is no rate for the intermediate company(ies) involved in the transaction.

<u>Final Results</u>, 85 Fed. Reg. at 301.

[6] Further citations Title 28 of the U.S. Code are to the 2018 edition.

[7] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

[8] Before filing the complaint, Plaintiffs moved for expedited document production under USCIT Rule 73.2(a), indicating that their "ability to seek judicial review is frustrated by the incompleteness of the administrative record."  <u>See</u> Pls.' Mot. to Apply Rule 73.2(a) to Def.'s Produc. of Docs. & Mot. to Expedite Rule 73.2 Deadline at 3, Feb. 20, 2020, ECF No. 9.  The court denied the motion, observing the "motion reveal[ed] Plaintiffs possess[ed] sufficient information to construct a complaint[,]" and citing the availability of other procedural paths for Plaintiffs to pursue that would not require the court to disrupt the usual course of litigation.  <u>See</u> Memo. & Order at 2, Feb. 27, 2020, ECF No. 14.

review of NLMK despite determining that NLMK had no shipments for the POR, as well as CBP's assignment to NLMK of a company-specific case number and, purportedly, the resultant assignment to NLMK of a company-specific rate, are unsupported by the agency record and otherwise unlawful.  See Compl. at 5–6 (Counts I–II).  Count III of Plaintiffs' complaint alleges that Commerce's application of a rate based on facts available with an adverse inference ("adverse facts available" or "AFA") is unsupported by the agency record and otherwise unlawful.[9]  See id. at 6

---

[9] In antidumping proceedings, Commerce estimates the "weighted average dumping margin for each exporter and producer individually investigated" and the "all-others rate for all exporters and producers not individually investigated." 19 U.S.C. §§ 1673b(d)(1)(A), 1673d(c)(1)(B)(i); see also 19 C.F.R. §§ 351.205, 351.210. The all-others rate is the "amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title" (i.e., based on facts available). 19 U.S.C. § 1673d(c)(5); see also id. at § 1677e.

In proceedings involving a nonmarket economy, Commerce presumes exporters and producers are under foreign government control with respect to export activities and will assign a single "country-wide" rate unless a respondent demonstrates it qualifies for a separate rate.  See Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1373 (Fed. Cir. 2013) ("Yangzhou") (citing Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997)); see also 19 C.F.R. § 351.107(d) (1999).

In its initial ADD investigation of HRC from Russia, when Russia was considered a nonmarket economy, Commerce selected Novolipetsk Iron & Steel Corporation ("NISCO") as a mandatory respondent.  See [HRC] from Brazil, Japan, and [Russia], 63 Fed. Reg. 56,607 (Dep't Commerce Oct. 22, 1998) (initiation of [ADD] investigations); [HRC] from [Russia], 64 Fed. Reg. 9,312, 9,314 (Dep't Commerce Feb. 25, 1999) (notice of prelim. determination of sales at less than fair value). However, NISCO subsequently withdrew from participation in the investigation.  See [HRC]

(footnote continued)

(Count III).    Counts IV through V of Plaintiffs' complaint contests Commerce's application of its reseller policy in this administrative review as unsupported by the agency record and otherwise unlawful, and avers that the application of the reseller policy when reviewing a company subject to an all-others rate is unreasonable and inconsistent with the requirements of the statute.  See id. at 6–7 (Count IV–V).  Count VI of the complaint avers that Commerce's reseller policy "unlawfully assigns combination rates in market economy proceedings and frustrate[s] the remedial nature of the statute."  See id. at 7 (Count VI).

On May 18 and May 22, 2020, respectively, Defendant-Intervenors SDI and Nucor filed motions to dismiss the complaint.  See generally SDI's Mot. Dismiss & Supp. Br.; Nucor's Mot. Dismiss.  On July 2 and July 7, 2020, Plaintiffs filed separate

---

from [Russia], 64 Fed. Reg. 38,626, 38,628 (Dep't Commerce July 19, 1999) (notice of final determination of sales at less than fair value).  Commerce used total facts available with an adverse inference to derive the Russia-wide rate because certain respondents did not respond to Commerce's request for information, and because Commerce could not verify, inter alia, NISCO's questionnaire response due to its withdrawal.  See id., 64 Fed. Reg. at 38,630.  After granting Russia market economy status, Commerce set the cash deposit rate equal to margins calculated in the final determination of its initial investigation, using the 184.56 percent AFA-based Russia-wide rate as the all-others rate.  See id., 64 Fed. Reg. at 38,641; see also Termination of the Suspension Agreement on [HRC] from [Russia], Rescission of 2013–2014 Administrative Review, and Issuance of [ADD] Order, 79 Fed. Reg. 77,455, 77,456 (Dep't Commerce Dec. 24, 2014).

Parties and Commerce sometimes use the shorthand "AFA" or "adverse facts available" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b).

responses to each motion.  <u>See</u> Pls.' Resp. [SDI's] Mot. Dismiss, July 2, 2020, ECF No.

38 ("Pls.' Resp. to SDI's Mot. Dismiss"); Pls.' Resp. Opp'n [Nucor'] Mot. Dismiss Pls.'

Compl., July 7, 2020, ECF No. 39 ("Pls.' Resp. to Nucor's Mot. Dismiss").  On July 23

and July 28, 2020, respectively, SDI and Nucor filed replies in support of their

motions to dismiss.  <u>See</u> SDI's Reply Supp. Mot. Dismiss; [Nucor'] Reply Br. Supp.

[Nucor's Mot. Dismiss], July 28, 2020, ECF No. 43.

On August 10, 2020, Plaintiffs moved for judgment on the agency record.  <u>See</u>

<u>generally</u> Pls.' 56.2 Mot.  On September 2, 2020, the court submitted questions to the

parties seeking clarification of issues related to the Court's jurisdiction and

Commerce's completion of the administrative review.  Ct.'s Letter, Sept. 2, 2020, ECF

No. 45 ("Letter I").  The parties filed their responses to the court's letter on September

30, 2020,[10] and replies on October 13, 2020.  <u>See</u> [SDI's] Resp. to [Letter I], Sept. 30,

2020, ECF No. 49 ("SDI's Resp. to Letter I"); Def.'s Resp. to [Letter I], Sept. 30, 2020,

ECF No. 50 ("Def.'s Resp. to Letter I"); [Nucor'] Resp. to [Letter I], Sept. 30, 2020,

ECF No. 51 ("Nucor's Resp. to Letter I"); Pls.' Resp. to [Letter I], Sept. 30, 2020, ECF

---

[10] In the interim, Defendant-Intervenors moved to stay deadlines pending resolution of their motions to dismiss, as well as for a twenty-one (21) day extension of current deadlines for briefing the merits of this action.  <u>See generally</u> <u>Novolipetsk Steel Public</u> <u>Joint Stock Co. v. United States</u>, 44 CIT __, 474 F. Supp. 3d 1354 (2020).  The court dismissed the motion to stay as untimely because, despite having ample opportunity to move for a stay, Defendant-Intervenors failed to do so until after Plaintiffs prepared and submitted their motion for judgment on the agency record and responses to the motions to dismiss.  <u>See</u> <u>id.</u>, 44 CIT at __, 474 F. Supp. 3d at 1357–59.  However, to accommodate the parties, the court extended the deadlines set forth in the briefing schedule by seven (7) days.  <u>Id.</u>, 44 CIT at __, 474 F. Supp. 3d at 1358–59.

No. 52; [SDI's] Reply Re: [Letter I], Oct. 13, 2020, ECF No. 58 ("SDI's Reply Re: Letter

I"); [Def.'s] Reply Re: [Letter I], Oct. 13, 2020, ECF No. 59; [Nucor's] Reply Re: [Letter

I], Oct. 13, 2020, ECF No. 60 ("Nucor's Reply Re: Letter I"); Pls.' Reply Re: [Letter I],

Oct. 13, 2020, ECF No. 61.

On October 16, 2020, Plaintiffs moved for permission to conduct discovery and

for a court order compelling completion and supplementation of the administrative

record.   See generally   Pls.' Mot. to Compel.   Shortly thereafter, Defendant-

Intervenors jointly responded to Plaintiffs' 56.2 motion for judgment on the agency

record.   See Def.-Intervenors' Joint Resp. Br. Opp'n [Pls.' 56.2 Mot.], Oct. 16, 2020,

ECF No. 63 ("Def-Intervenors' Joint 56.2 Resp. Br.").   Defendant also filed its

response, and, in so doing, moved to dismiss Plaintiffs' complaint.   See generally

Def.'s Mot. & 56.2 Resp. Br.   On November 23, 2020, Plaintiffs submitted a reply in

support of their 56.2 motion and response to Defendant's motion to dismiss.   Pls.'

Reply to Def.'s Mot. Dismiss & Resp. [Supp.] [Pls.' 56.2 Mot.], Nov. 23, 2020, ECF No.

70 ("Pls.' 56.2 Reply & Resp. Def.'s Mot. Dismiss").

On December 18, 2020, the court held oral argument.   See Oral Arg., Dec. 18,

2020, ECF No. 75 ("Oral Arg.").   During oral argument, it became apparent that the

parties disagreed as to whether Plaintiffs had been assigned a company-specific rate

as a result of Commerce's decision to apply its reseller policy and complete the

administrative review.   See, e.g., Oral Arg. at 00:16:00–00:19:10, 00:26:00–00:30:00;

but see Compl. ¶ 19 ("The notice of Final Results and corresponding customs

instructions issued in connection with this administrative review assign a company-specific case number to NLMK indicating the assignment of a corresponding company-specific rate to NLMK."). Thus, the court requested additional submissions, seeking clarification regarding Commerce's application of the reseller policy to the underlying administrative proceeding, and enquiring whether the case was properly before the court in light of any such clarifications. See Oral Arg. at 02:00:25–02:02:19; see also Ct.'s Letter, Jan. 4, 2021, ECF No. 76 ("Letter II"). By January 26, 2021, the court received all submissions related to questions set out in its letter to the parties. See Def.'s Resp. to [Letter II], Jan. 19, 2021, ECF No. 79 ("Def.'s Resp. to Letter II"); Def.-Intervenors' Joint Resp. to [Letter II], Jan. 19, 2021, ECF No. 80 ("Def.-Intervenors' Joint Resp. to Letter II"); Pls.' Resp. to [Letter II], Jan. 19, 2021, ECF No. 81 ("Pls.' Resp. to Letter II");[11] Def.'s Reply to [Pls.' Resp. to Letter II], Jan. 26, 2021, ECF No. 83 ("Def.'s Reply Re: Letter II").

## JURISDICTION AND STANDARD OF REVIEW

The asserted basis for jurisdiction is 19 U.S.C. § 1516a(a)(2)(A)(I) and § 1516a(2)(B)(iii), which, under 28 U.S.C. § 1581(c), grant the court authority to review actions contesting a final determination in an administrative review. The court shall hold unlawful any determination found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C.

---

[11] Pin citations to Plaintiffs' response to Letter II reference the document's external pagination, with the first page being the caption and title to Plaintiffs' response.

§ 1516a(b)(1)(B)(i).  "The party invoking the [court's] jurisdiction bears the burden of establishing it. However, [the court] must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." Juancheng Kangtai Chem. Co. v. United States, 932 F.3d 1321, 1326 (Fed. Cir. 2019) (quoting Hutchison Quality Furniture, Inc. v. United States, 827 F.3d 1355, 1359 (Fed. Cir. 2016)).  "In ascertaining whether jurisdiction is proper, [the court] look[s] to 'the true nature of the action.'"  Id. (quoting Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)).

An agency enjoys a presumption of regularity as to the record it prepares.[12] See, e.g., Fund for Animals v. Williams, 245 F. Supp. 2d 49, 55–57 (D.D.C. 2003); Pacific Shores Subd. v. U.S. Army Corps of Eng., 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("Pacific Shores"); see also Giorgio Foods, Inc. v. United States, 35 CIT 297, 299–301, 755 F. Supp. 2d 1342, 1345–46 (2011) (citations omitted) ("In an administrative review case, it is rare that a federal court will consider information outside of the record submitted.").  However, a court may order completion or supplementation of

---

[12] Pursuant to 19 U.S.C. § 1516a(b)(2)(A), unless otherwise stipulated by the parties, the record for review shall consist of

    (i)    a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by [19 U.S.C. § 1677f(a)(3)]; and

    (ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

Court No. 20-00031                                                                  Page 14

the record in light of clear evidence that the record was not properly designated or

the identification of reasonable grounds that documents considered by the agency

were not included in the record.  See Citizens to Preserve Overton Park, Inc. v. Volpe,

401 U.S. 402, 419 (1971); see also, e.g., Pacific Shores, 448 F. Supp. 2d at 5–7.

## DISCUSSION

## I.   Leave to Amend the Index to the Administrative Record

Defendant moves for leave to amend the index to the administrative record to

include previously omitted "liquidation instructions of [NLMK's] products issued to

[CBP] on March 29, 2019[.]"[13]  Def.'s Mot. Leave to Amend at 1–2; see also March 29,

2019 Liquidation Instructions to CBP, PD 51, bar code 4048144-01 (Mar. 29, 2019)

("March 2019 Liquidation Instructions").  Plaintiffs oppose, urging that the court

treat Defendant's motion as a responsive admission with respect to Plaintiffs' motion

to compel completion and supplementation of the record, and requesting the court

otherwise deny Defendant's motion as a prejudicial and unsupported attempt to

impair Plaintiffs' right to conduct discovery.  See Pls.' Resp. [Def.'s Mot. Leave To

Amend] & Reply to Def.'s Opp'n [Pls.' Mot. to Compel] at 3–13, Nov. 16, 2020, ECF

No. 69 ("Pls.' Resp. to Mot. for Leave & Reply"); see also Pls.' Mot. to Compel.  For the

---

[13] Defendant moves to amend the index to the public record, but because the index
before the court reflects the documents before Commerce during the administrative
review, amending the index is effectively the same as correcting the record.  As such,
the court considers Defendant's motion as a request to amend the index and to correct
the record.

following reasons, the court grants Defendant's motion for leave to amend the administrative index and correct the administrative record.

Although there are legitimate concerns regarding Defendant's certification of the index to the administrative record, allowing leave to amend the index will not prejudice Plaintiffs.  Under USCIT Rule 7(b)(1)(B), a request for a court order must be made by motion that, <u>inter alia</u>, states "with particularity the grounds for seeking the order[.]"  As Plaintiffs point out, Defendant's initial explanation for failing to include the March 2019 Liquidation Instructions is lacking.[14]  Def.'s Mot. Leave to Amend at 2; <u>but see</u> Pls.' Resp. to Mot. for Leave & Reply at 7–8.  However, Defendant later clarified during oral argument that the oversight was caused by counsel's own error, explaining that the omission resulted from a lapse in communication between

---

[14] Defendant stated that the liquidation instructions were "inadvertently omitted from the filed public record index."  Def.'s Mot. Leave to Amend at 2.  According to Defendant, the liquidation instructions "are typically the last record document and, here, they were not caught-up to the record."  <u>Id.</u>  Apparently as a result, Defendant claims to have "not notice[d] the error when filing the record index."  <u>See id.</u>  Plaintiffs object because Defendant had been on notice for several months about the existence of the omitted instructions by the time Defendant moved for leave, and yet the motion arrives only after Plaintiffs moved for discovery.  <u>See</u> Pls.' Resp. to Mot. for Leave & Reply at 6–7.  Moreover, Plaintiffs allege Defendant predicates its motion on factual misrepresentations.  <u>See id.</u> at 7–9.  According to Plaintiffs, the omitted instructions are not "liquidation instructions of [NLMK's] products . . . but are instead the automatic liquidation instructions pertaining to those companies for which no review was initiated."  <u>Id.</u> at 8.  Plaintiffs assert that these automatic liquidation instructions "are not typically 'the last record document' but rather, are one of the first."  <u>Id.</u>  Thus, Plaintiffs urge the court to deny Defendant's motion for "fail[ure] to state with particularity the grounds for seeking the order[.]"  <u>Id.</u> at 7 (citing USCIT Rule 7(b)(1)(B)).

Defendant and Commerce in the midst of counsel's busy trial schedule.  Oral Arg. at

00:09:02–00:09:42.

Plaintiffs assert that Defendant mischaracterized the omitted instructions as

liquidation instructions typically included at the end of the review, as opposed to

automatic liquidation instructions included at the beginning.  See Pls.' Resp. to Mot.

for Leave & Reply at 8.  However, the court concludes that no prejudice results from

any such misstatement by Defendant because Plaintiffs have not established the

significance of the March 2019 Liquidation Instructions.  Namely, Plaintiffs state

> Plaintiffs ability to defend their interests was prejudiced by Commerce's
> decision to withhold the March 29, 2019 instructions from the record. As
> Plaintiffs have said time and again, the information revealed in the
> March 29, 2019 CBP instructions is material to Plaintiffs complaint and
> indicates that other information has been omitted from the agency
> record.  In this litigation, Plaintiffs have been prejudiced by Defendant's
> failure to acknowledge the incompleteness of the administrative record
> in April when Defendant filed the record with this Court. A timely
> admission of incompleteness and the inclusion of this document on the
> record would have affected the arguments and issues addressed in the
> briefs. Had this document been on the record prior to briefing, Plaintiffs
> could have required Defendant to address its substantive content,
> rather than devoting resources to proving its existence. A timely
> admission would have likely altered the scope and content of the two
> dispositive motions filed by Defendant-Intervenors, both of which argue
> that the record is complete and that Plaintiffs had notice of Commerce's
> actions.

Pls.' Resp. to Mot. for Leave & Reply at 6.  Notwithstanding expenditure of additional

resources, Plaintiffs do not clarify how the "substantive content" of the omitted March

2019 Liquidation Instructions relates to Commerce's final determination.  The March

2019 Liquidation Instructions do not contain information Commerce used to make a

decision; rather, they reflect a decision that Commerce made.  Moreover, despite Plaintiffs' insistence that the appearance of a company-specific case number in the March 2019 Liquidation Instructions would have given NLMK notice as to Commerce's intent to complete the administrative review (and purportedly assign a company-specific rate to NLMK), that information can be found in other record documents.  See Oral Arg. at 00:50:38–00:52:39; but see, e.g., Memo. Re: Draft Customs Instructions, PD 34, bar code 3898208-01 (Oct. 9, 2019) ("October 9th CBP Instructions"); Memo. Re: No Shipment Inquiry, PD 24, bar code 3856318-01 (July 1, 2019) ("July 1st No Shipment Inquiry").[15]  Consequently, Plaintiffs identify no harm suffered as a result of Defendant's omission of the March 2019 Liquidation

---

[15] Defendant explained during oral argument that the omitted document is a standard instruction directing automatic liquidation of entries except for any entries relating to firms listed in paragraph three (i.e., NLMK and others), which would not be new information to Plaintiffs given that the Preliminary Results announced that a review of NLMK had been requested, and that such instructions directing CBP not to liquidate entries for entities subject to an administrative review are standard.  See Oral Arg. at 00:09:42–00:10:47; see also March 2019 Liquidation Instructions, ¶¶ 2– 3, at 3.  Plaintiffs submit that the company-specific case number in the March 2019 Liquidation Instructions would have alerted them to the fact that NLMK was receiving a company-specific rate, enabling them to challenge Commerce's refusal to rescind the administrative review with respect to NLMK.  See Oral Arg. at 00:50:38– 00:53:00 (arguing that the March 2019 Liquidation Instructions is the only document that makes clear NLMK was assigned a company-specific case number and, purportedly as a result, a company-specific rate).  However, as the court will further explain, Plaintiffs' submission fails because: NLMK did not receive a company-specific rate in this proceeding; Commerce indicated its intention to complete the review in its preliminary determination; and, contrary to Plaintiffs' position, subsequent liquidation instructions to CBP included in the record do contain information indicating that NLMK was assigned a company-specific case number.

Court No. 20-00031                                                    Page 18

Instructions from the administrative index or the record before Commerce during the administrative proceeding.  Defendant and Commerce's omission is the kind of harmless procedural error that this Court has held should not constitute the basis for setting aside agency action.  Cf., e.g., AK Steel Corp. v. United States, 21 CIT 1265, 1273, 988 F. Supp. 594, 602–03 (1997).

Plaintiffs allege that Defendant's motion is a deliberate attempt to mislead the court in order to restore an appearance of regularity and obstruct disposition of Plaintiffs' motion to compel completion and supplementation of the record.  Pls.' Resp. to Mot. for Leave & Reply at 4–6, 9.  Specifically, Plaintiffs maintain that

> Defendant has knowingly mischaracterized this document to make it appear as though adding it to the record after publication of the final determination is consistent with ordinary administrative practice. It is a deliberate attempt to create the appearance of regularity where none exits. The Court should not accept or validate Defendant's false representations by granting the Motion for Leave.

Id. at 9.  However, in light of Defendant's clarification during oral argument, Plaintiffs' position is supported only by speculation.  And even if Plaintiffs correctly suppose that Defendant or Commerce deliberately waited to submit this document, a position for which Plaintiffs offer no support, Plaintiffs still fail to identify how they have been harmed in a way that would support the court denying Defendant's motion for leave to amend the administrative record.  Prejudice means more than pointing to a mistake or even a deliberate act by the other side; prejudice results when, due to an act or omission by the other side, a litigant has been deprived of an opportunity which it cannot now be restored.  Cf., e.g., Vietnam Ass'n of Seafood Exporters &

Producers v. United States, 38 CIT __, __, Slip Op. 14-75 at 8 (June 26, 2014) ("The court finds that granting the motion will not prejudice any of the parties because no party will forgo any procedures to which it normally would be entitled."); An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States, 39 CIT __, __, 118 F. Supp. 3d 1368, 1373 (2015).  Plaintiffs have not been foreclosed from advancing their submissions that the administrative record was incomplete and that they did not have notice of Commerce's actions during the underlying proceeding; the court's decision to grant Defendant's motion for leave to amend the index to the public record now before the court says nothing about the veracity of Plaintiffs' allegations regarding Commerce's actions during the course of the underlying administrative review.  Even if Plaintiffs were successful in arguing that inclusion of the March 2019 Liquidation Instructions was necessary for Commerce to support its determination, and that absence of the instructions deprived Plaintiffs of the ability to make an argument or otherwise detracted from the reasonableness of Commerce's determination, the proper remedy would be a remand so that Plaintiffs could argue those points before Commerce.  See JSW Steel, Inc. v. United States, 44 CIT __, __, 466 F. Supp. 3d 1320, 1327–34 (2020); see also Guy v. Glickman, 945 F. Supp. 324, 329 (D.D.C. 1996) (citations omitted)).  Accordingly, the court grants Defendant's motion for leave to amend the index to the administrative record and correct the record.

## II.   Standing to Assert Claims Challenging the Completion of Review & Application of Reseller Policy

Defendant and Defendant-Intervenor argue that Plaintiffs' complaint should be dismissed because Plaintiffs do not present a case or controversy for this court to adjudicate.   See Def.'s Mot. & 56.2 Resp. Br. at 7, 28 ("[G]iven that [P]laintiffs certified that they had no entries during the period of review and do not contend that they are a reseller, it is difficult to discern whether they have an injury-in-fact."); Def-Intervenors' Joint 56.2 Resp. Br. at 7 (citing, inter alia, SDI's Resp. to Letter I at 4–5; Nucor's Resp. to Letter I at 2–6, 8–18; SDI's Reply Re: Letter I; Nucor's Reply Re: Letter I at 1–6)) ("[B]ecause there is no 'case or controversy' at issue in this action, Plaintiffs' complaint should be dismissed for being moot."); see also Def.'s Resp. to Letter II at 9–10; Def.-Intervenors' Joint Resp. to Letter II at 7–9.   Namely, Defendant and Defendant-Intervenor submit that the gravamen of Plaintiffs' complaint arises out of the mistaken impression that Commerce's refusal to rescind the underlying review resulted in NLMK receiving a company-specific rate.   See, e.g., Def-Intervenors' Joint 56.2 Resp. Br. at 7; Nucor's Mot. Dismiss Br. at 19–22 (". . . Commerce's completion of its review as to NLMK had the same effect on the company as a rescission of the review on the company[.]"); SDI's Reply Supp. Mot. Dismiss at 2–5 (arguing the entire action should be dismissed because it is based on a fundamental misunderstanding of Commerce's final determination); Def.-Intervenors' Joint Resp. to Letter II at 7–9; Def.'s Resp. to Letter II at 4–10 (clarifying

that NLMK did not receive a company-specific rate).[16]   Contrary to Plaintiffs'

averments, Defendant and Defendant-Intervenors insist that "[i]f NLMK received an

individual rate in a prior review, it would continue to retain the individual rate upon

the publication of the notice of final results for this review."  Def.'s Resp. to Letter I

at 8 (citing, inter alia, Parkdale Int'l, Ltd. v. United States, 31 CIT 1229, 508 F. Supp.

2d 1338 (2007) ("Parkdale II")); see also, e.g., SDI's Resp. to Letter I at 10 (describing

NLMK's contention that the purported NLMK specific rate assigned in this review

would replace any individual rate assigned in the 2016–2017 review as "categorically

false."); Nucor's Resp. to Letter I at 14 (". . . Nucor concurs with SDI that if NLMK

had received an individual rate in a prior review, it would retain that rate despite the

completion of this review.").  Plaintiffs counter that standing "cannot be evaluated in

a vacuum" and maintain that "[w]hen Congress has extended standing by statute,"

the question of whether NLMK has standing to challenge Commerce's application of

---

[16] Although Defendant's brief could be construed to implicitly acknowledge that
NLMK received a company-specific rate, see Def.'s Mot. & 56.2 Resp. Br. at 28
("[P]laintiffs have made no assertion or showing that they have suffered any injury
as a result of CBP assigning a company-specific rate."), Defendant has made clear in
its filings that NLMK did not receive a company-specific rate.  See, e.g., Def.'s Resp.
to Letter II at 9–10 (citations omitted) ("The previously determined rate applicable to
NMLK is the all-others rate published in the final determination as reflected in the
order . . . Put simply, the assessed rate would not have changed – NLMK would be
assessed either way at the all other's rate."); see also Def.'s Resp. to Letter I at 8
(citation omitted) ("If NLMK received an individual rate in a prior review, it would
continue to retain th[at] individual rate upon the publication of the notice of final
results for this review.").

the reseller policy "is evaluated under the zone of interests test[.]"  Pls.' Resp. to

Letter II at 7–8 (citing <u>Allen v. Wright</u>, 468 U.S. 737 (1984); <u>Bennett v. Spear</u>, 520

U.S. 154 (1997)).  For the following reasons, Counts I and II of Plaintiffs' complaint,

as well as Counts IV through VI,[17] are dismissed for lack of standing.

The Constitution constrains the federal courts' jurisdiction to cases which

involve "actual cases or controversies," and standing constitutes part of this

limitation.  <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 37–38 (1976) ("No

principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to actual

cases or controversies."); <u>see also</u> U.S. CONST. art. III, § 2, cl. 1. "[T]he core component

of standing is an essential and unchanging part of the case-or-controversy

requirement of Article III."  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560

(1992) (citation omitted).  To establish standing, a plaintiff must satisfy three

elements.  First, it must have suffered an "injury in fact," that is, "an invasion of a

legally protected interest" that is "concrete and particularized" and "actual or

imminent, not 'conjectural' or 'hypothetical[.]'"  <u>Id.</u> at 560 (citations omitted).  Second,

a causal connection must exist between the injury and the conduct complained of.  <u>Id.</u>

---

[17] Neither Plaintiffs' complaint nor their subsequent filings makes clear whether Counts IV through VI are facial or as applied challenges.  The court dismisses Counts IV through VI of Plaintiffs' complaint for lack of standing to the extent that they present an "as-applied" challenge to Commerce's reseller policy.  If Counts IV through VI present a challenge to Commerce's liquidation instructions, the court also dismisses for lack of standing.

Third, the plaintiff must show a likelihood that the injury can be redressed by a favorable court decision. Id. at 561.

Plaintiffs lack standing with respect to Counts I and II of the complaint, as well as Counts IV through VI to the extent that these latter claims present an "as applied" challenge to Commerce's reseller policy, because, contrary to Plaintiffs' claims, Commerce did not assign NLMK a company-specific rate. See, e.g., Pls.' 56.2 Br. at 9 ("Commerce's issuance of Final Results, manufacturer-specific assessment rate, and company-specific deposit rate to NLMK not based on a review of subject entries during the POR and the determinations reached is unlawful."). Commerce's decision to complete the administrative review pursuant to its reseller policy and to publish its final determination does not change NLMK's assessment rate and cash deposit requirements.[18]  As Defendant-Intervenors point out, the Final Results state that the "[t]he cash deposit rate[ ] for NLMK . . . will remain unchanged from the rate assigned to [it] in the most recently completed review[.]" See 85 Fed. Reg. at 301; but see Compl. ¶¶ 19–20, 27.  Underlying Plaintiffs' objection to the Final Results appears to be Plaintiffs' belief that CBP's assignment of a company-specific case number

---

[18] Plaintiffs' objection to the Reseller Policy as applied in this case appears to include an objection to Commerce's decision to complete the review in furtherance of the stated objectives of the policy.  Although the clarification of the Reseller Policy was published in 2003, see generally 68 Fed. Reg. 23,954, in 2010, Commerce announced that it would be "more consistent with the May 2003 clarification not to rescind the review" in cases where there are no shipments.  Magnesium Metal From the Russian Federation, 75 Fed. Reg. 56,989, 56,990 (Dep't Commerce Sept. 17, 2010) (final results of [ADD] admin. review) ("Magnesium Metal").

necessarily reflects receipt of a company-specific rate.  <u>See</u> Pls.' Resp. to SDI's Mot.

Dismiss at 14–16.  Responding to the court's request for further clarification on the

matter, Plaintiffs point to the following statement contained within Commerce's

Antidumping Manual:

> Companies for which a cash deposit rate has been assigned will have
> their own profile in the module (at the nine-digit level from the -001
> suffix and above), which identifies their respective applicable rate and a
> date that indicates when that rate became effective. Absent the
> assignment of a company-specific rate, merchandise must enter under a
> general profile in the module (usually designated with the -000 suffix).

Pls.' Resp. to Letter II at 4 (citing Antidumping Manual, U.S. Dep't of Commerce,

Int'l    Trade    Admin.    ("AD    Manual")    (2015),    available    at

https://web.archive.org/web/20180417165209/https://enforcement.trade.gov/admanu

al/index.html (last visited Apr. 8, 2021)).  However, the excerpt quoted by Plaintiffs

does not support their position.  That a company with its own rate will have its own

case number does not necessarily mean that a company with its own case number

has a company-specific rate.  Further, as Defendant counters, the AD Manual states

that it "is for the internal training and guidance of Enforcement and Compliance

(E&C) personnel only . . . [and] cannot be cited to establish [Commerce's] practice.").

<u>See</u> Def.'s Reply Re: Letter II at 3 (quoting, inter alia, AD Manual, ch. 1, at 1; <u>Bebitz</u>

<u>Flanges Works Private Ltd. v. United States</u>, 44 CIT __, __, 433 F. Supp. 3d 1309,

1323–24 (2020)).  Defendant attests that "[i]f NLMK received an individual rate in a

prior review, it would continue to retain th[at] individual rate upon the publication

of the notice of final results for this review."  <u>See</u> Def.'s Resp. to Letter I at 8 (citing

inter alia, Parkdale II, 31 CIT 1229, 508 F. Supp. 2d 1338).  Thus, any company-specific rate assigned in the previous review would carry forward.  See id.

Indeed, assigning a company-specific rate to NLMK would contradict the policy underlying Commerce's methodology.  As explained in Parkdale II, "Commerce has a stated policy that 'company-specific assessment rates must be based on the sales information of the first company in the commercial chain that knew, at the time the merchandise was sold, that the merchandise was destined for the United States.'"  31 CIT at 1231, 508 F. Supp. 2d at 1343 (quoting Antidumping & Countervailing Duty Proceedings, 63 Fed. Reg. 55,361, 55,362 (Dep't Commerce Oct. 15, 1998) (notice and request for comment on policy concerning assessment of antidumping duties)).  "By identifying the party that had knowledge of the destination of the subject merchandise, Commerce determines which entity was the 'price discriminator' that engaged in the dumping, and hence which company's dumping margin should apply to a given entry."  Id. (citing Reseller Policy, 68 Fed. Reg. at 23,960).  Here, Commerce determined that none of the respondents had shipments of subject merchandise during the POR.  See Final Results, 85 Fed. Reg. at 301.  Since there is no sales information upon which to calculate a dumping margin, it follows that Commerce

could not have calculated a company-specific rate for NLMK in this review.[19]  Nor do

the <u>Final Results</u> indicate that NLMK received a company-specific rate.  <u>See</u>

<u>generally</u>, 85 Fed. Reg. 299. Instead, as Defendant explains, Commerce views it

necessary to complete the administrative review out of concern that, under 19 U.S.C.

§ 1675(a)(2)(C), Commerce would otherwise be unable to apply the reseller policy to

entries of unknown resellers that later surface,[20] and would instead be required to

liquidate at the entered rate— which may or may not be the appropriate rate for that

POR under the reseller policy.  Oral Arg. at 00:30:00–31:28:00, 01:27:30–01:30:27.

Commerce did not calculate and assign a company-specific rate for NLMK.[21]

Thus, NMLK's claims challenging the completion of the review—or the application of

---

[19] To conclude otherwise would require the court to presume without evidence that Commerce here intentionally disregards its own policy and flouts its statutory duties under 19 U.S.C. § 1675(a)(2) by inventing a company-specific dumping margin— without any sales information—in order to establish a company-specific rate for NLMK.  The court declines to do so.  <u>See</u> <u>Am-Pro Protective Agency, Inc. v. United States</u>, 281 F.3d 1234, 1238–43 (Fed. Cir. 2002).

[20] Plaintiffs themselves acknowledge how reseller entries may surface unbeknownst to an exporter or producer.  In arguing their point that the reseller policy would result in the unlawful assignment of an AFA rate, Plaintiffs explain how an intermediary-reseller may purchase large quantities of a given commodity during one POR and sell during a subsequent POR.  <u>See</u> Oral Arg. at 00:23:40–00:25:00.

[21] Plaintiffs intimate that Commerce's completion of the administrative review is unlawful with respect to NOVEX specifically.  <u>See, e.g.</u>, Pls.' 56.2 Br. at 22 ("This required fact pattern that is particularly problematic for plaintiffs, given that all of NLMK's exports of hot rolled steel are made by its affiliated reseller NOVEX, who is also a plaintiff to this action.").  Insofar as Plaintiffs' reference to NOVEX amounts to an attempt at argumentation, it is perfunctory and thus waived.  <u>See, e.g.</u>, <u>Home Prods. Int'l, Inc. v. United States</u>, 36 CIT 665, 673, 837 F. Supp. 2d 1294, 1301 (2012) (citations omitted).

the reseller policy—and the purported assignment of a company-specific rate have

lost their character as live controversies; adjudicating those claims would result in

the sort of inappropriate advisory opinion "on abstract propositions of law" that

Courts must avoid.  See Hall v. Beals, 396 U.S. 45, 48 (1969).[22]  For these reasons, in

addition to the reasons set forth below, the court dismisses NLMK's complaint.[23]

---

[22] Plaintiffs' apparent position that the statute permits interested parties the ability
to seek out declarations of lawfulness from the court absent a showing that there is a
case or controversy is reductive and incorrect.  Plaintiffs submit that 28 U.S.C. § 2643
indicates Congress's desire for the Court to review Commerce's actions and declare
whether or not they are lawful, which is the relief Plaintiffs seek in this proceeding.
See Oral Arg. at 01:20:07–01:21:00 (citing 28 U.S.C. § 2643); see also Summons at 1
(asserting 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c) as the basis for standing).
Plaintiffs also assert that the zone of interest test applies when determining whether
NLMK has standing to appear before the court is misplaced.  See Pls.' Resp. to Letter
II at 7–8 (citations omitted).  Irrespective of whether Plaintiffs can show that NLMK
has statutory standing, such a showing does not obviate constitutional constraints on
Article III Courts to adjudicate actual cases and controversies.  Cf. Lexmark Int'l, Inc.
v. Static Control Components, Inc., 572 U.S. 118, 125–32 (2014).  As such, any request
for relief relating to Plaintiffs' position that the court may declare the lawfulness of
Commerce's actions even absent a case or controversy fails.  See, e.g., Compl. ¶ 1
("Additionally, Plaintiffs seek a judicial determination regarding the lawfulness of
Defendant's action taken in the underlying administrative proceeding.  Plaintiffs
request an award of injunctive and declaratory relief from this Court.").

[23] Defendant and Defendant-Intervenors also argue that any claims properly before
the court pursuant to 28 U.S.C. § 1581(c) would nevertheless be dismissed because
Plaintiffs failed to exhaust their administrative remedies.  See Def.'s Mot. & 56.2
Resp. Br. at 13–18; SDI's Mot. Dismiss & Supp. Br. at 7–11; Nucor's Mot. Dismiss Br.
at 16–19.  Plaintiffs counter that they could not have exhausted their administrative
remedies due to lack of notice.  See, e.g., Pls.' Resp. to SDI's Mot. Dismiss at 1–17;
Pls.' Resp. to Nucor's Mot. Dismiss at 11–12.

(footnote continued)

Parties are required to exhaust administrative remedies before the agency by raising all issues in their initial case briefs before Commerce. Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010) ("Dorbest") (citing 19 C.F.R. § 351.309(c)(2), (d)(2); Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375 1383 (Fed. Cir. 2008)); see also ABB, Inc. v. United States, 920 F.3d 811, 818 (Fed. Cir. 2019). However, the court has discretion not to require exhaustion if a party was not afforded a full and fair opportunity to raise the issue before the agency. Qingdao Taifa Group Co v. United States, 33 CIT 1090, 1093, 637 F. Supp. 2d 1231, 1236–37 (2009) (citing LTV Steel Co. v. United States, 21 CIT 838, 868–69, 985 F. Supp. 95, 120 (1997)); see also 28 U.S.C. § 2637(d); Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1029 (Fed. Cir. 2007). Plaintiffs' claim that NLMK should be excused from having to exhaust its administrative remedies because it lacked notice of Commerce's intention to assign it a company-specific number and complete the review is contradicted by record documents.

First, Commerce expressly contemplates completion of the administrative review in the preliminary results. See Prelim. Results, 84 Fed. Reg. at 53,411 ("[c]onsistent with Commerce's practice . . . it is not appropriate to rescind the review with respect to NLMK . . . but, rather, to complete the review and issue appropriate instructions to CBP based on the final results of this review."). Second, for all of Plaintiffs' objections regarding the purportedly anomalous nature (and ministerial significance) of Commerce's assignment of a company-specific case number ending in "002" to NLMK, Plaintiffs did not raise any concerns with respect to the case number's appearance next to "Novolipetsk Steel" in both the July 1, 2019 no shipment inquiry to CBP as well as Commerce's October 9, 2019 draft liquidation instructions. See October 9th CBP Instructions at 1 & Attach. I; July 1st No Shipment Inquiry. Given Commerce's declaration in the Prelim. Results, as well as the appearance of a company-specific number for NLMK in record documents—the importance of which Plaintiffs themselves assign significant weight—it is evident that Plaintiffs were afforded a full and fair opportunity to raise their concerns regarding Commerce's completion of the administrative review.

Therefore, any claims from Plaintiffs alleging that Commerce's adjustment to its application of the Reseller Policy—as illustrated in Magnesium Metal—is inconsistent with the policy or otherwise unlawful should have been exhausted before the agency. See, e.g., Magnesium Metal, 75 Fed. Reg. at 56,990 (". . . we continue to find that it is more consistent with the May 2003 clarification not to rescind the review in part in these circumstances but, rather, to complete the review[.]"). Nonetheless, the court need not reach these arguments because, as discussed, Plaintiffs' claims are dismissed for want of standing.

## III.   The All-Others Rate

Defendant and Defendant-Intervenor argue that the court should dismiss Count III of Plaintiffs' complaint challenging the all-others rate as an untimely attempt to challenge Commerce's determination of the all-others rate.  See SDI's Mot. Dismiss & Supp. Br. at 11–13; Nucor's Mot. Dismiss Br. at 14 (concurring with SDI's contention, with respect to Count III of Plaintiffs' complaint, that any challenge to the all-others rate is time-barred); SDI's Resp. to Letter I at 3; Def.'s Resp. to Letter I at 3; Def.'s Mot. & 56.2 Resp. Br. at 12–13, 28–29.  Plaintiffs object to any such characterization of Count III of their complaint, arguing that "a plain reading of the complaint makes clear that [Count III] challenges Commerce's assignment of a company-specific AFA rate to NLMK."  Pls.' Resp. to SDI's Mot. Dismiss at 16.  The court dismisses Count III's challenge to the all-others rate.

As explained, Commerce did not assign NLMK a company-specific rate, let alone an AFA rate.  Instead, Commerce continued to assign to NLMK the all-others rate in this proceeding.  Final Results, 85 Fed. Reg. at 301.  Thus, Count III of Plaintiffs' complaint is dismissed.

## IV.   Facial Challenge to the Reseller Policy

Insofar as any of the counts of Plaintiffs' complaint present a facial challenge to Commerce's reseller policy or to Commerce's implementing instructions, Defendant and Defendant-Intervenor assert that the Court does not have subject matter jurisdiction under 28 U.S.C. § 1581(c).  See, e.g., Def.'s Mot. & 56.2 Resp. Br.

Court No. 20-00031                                                                                Page 30

at 9–12 (requesting the court dismiss any facial challenge as untimely and any challenge to Commerce's liquidation instructions for lack of subject matter jurisdiction); Nucor's Mot. Dismiss Br. at 8–16.  According to Defendant-Intervenors, Plaintiffs' complaint cannot otherwise be heard under 28 U.S.C. § 1581(i) because Plaintiffs failed to concurrently file a summons and complaint.  See, e.g., Nucor's Mot. Dismiss Br. at 11, 15–16; SDI's Resp. to Letter I at 1–2; see also USCIT Rule 3(a)(3).  Defendant adds that an action challenging the lawfulness of the reseller policy on its face under § 1581(i) would also be untimely, given the two-year statute of limitations.  Def.'s Mot. & 56.2 Resp. Br. at 7, 9–11.  Plaintiffs maintain that all of their claims are properly commenced pursuant to 28 U.S.C. § 1581(c).  Pls.' 56.2 Reply & Resp. Def.'s Mot. Dismiss at 1–4.  To the extent that Counts IV through VI present facial challenges to the reseller policy,[24] the claims are dismissed for lack of jurisdiction.

    To commence an action pursuant to 28 U.S.C. § 1581(i), a party must concurrently file a summons and complaint.  USCIT Rule 3(a)(3).  A 28 U.S.C. § 1581(i) civil action is time-barred unless it is commenced within two years after the cause of action accrues.  See 28 U.S.C. § 2636(i).  Any facial challenge that Plaintiffs present to the reseller policy "accrue[s] at the time the rule was published, not when the [policy] is applied to [Plaintiffs.]"  Parkdale II, 31 CIT at 1236–37, 508 F. Supp.

---

[24] For reasons explained, whether or not a challenge to Commerce's liquidation instructions is properly commenced pursuant to 28 U.S.C. § 1581(c), the court lacks jurisdiction over such a claim due to lack of standing.

2d at 1347–48; see also Parkdale Int'l, Ltd. v. United States, 31 CIT 720, 491 F. Supp. 2d 1262 (2007) ("Parkdale I").

To the extent that Counts IV through VI present a facial challenge to Commerce's Reseller Policy, the cause of action would have accrued May 6, 2003 when Commerce published notice of clarification of its practice. See generally 68 Fed. Reg. 23,954. Plaintiffs have yet to commence an action in accordance with USCIT Rule 3(a)(3), well beyond two-years after the cause of action accrued. Plaintiffs suggest that, in the event that jurisdiction under 28 U.S.C. § 1581(c) is not proper, the Court's holding in Parkdale I would counsel granting Plaintiffs leave to amend their complaint, as opposed to dismissal. See Pls.' Resp. to Nucor's Mot. Dismiss at 7–8, 9–10 (citing Parkdale I, 31 CIT at 725–27, 491 F. Supp. 2d at 1269–70). However, in Parkdale II, the Court found that plaintiff's facial challenge to the reseller policy could proceed under 28 U.S.C. § 1581(i) where defendant in that case failed to raise statute of limitations as an affirmative defense. See 31 CIT at 1236–37 & n.6, 508 F. Supp. 2d at 1347–48 & n.6. Here, Defendant raised statute of limitations in their motion to dismiss, see Def.'s Mot. & 56.2 Resp. Br. at 7, 9–11, and Plaintiffs have not moved to amend their complaint to plead 28 U.S.C. § 1581(i) as a basis for jurisdiction. As a result, the court dismisses Plaintiffs' complaint for lack of jurisdiction.

## V.   Motions for Discovery

As discussed, the court dismisses Plaintiffs' complaint. Thus, Plaintiffs' motion for completion of the record, supplementation of the record, and discovery for

purposes of completing and supplementing the record, is dismissed as moot.  The court has considered the remainder of Plaintiffs' arguments and finds them to be without merit.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's motion for leave to amend the administrative record is granted; and it is further

**ORDERED** that the amended administrative record is deemed filed; and it is further

**ORDERED** that Defendant's and Defendant-Intervenors' motions to dismiss are granted and Plaintiffs' complaint is dismissed; and it is further

**ORDERED** that Plaintiffs' motion for judgment on the agency record and motion for discovery are dismissed.  Judgment will enter accordingly.


                                                          /s/ Claire R. Kelly
                                                          Claire R. Kelly, Judge


Dated:          April 13, 2021
                New York, New York